{¶ 41} I respectfully dissent.
 {¶ 42} The judgment of the trial court granting Brooks' motion to suppress should be reversed for two reasons. First, the trial court granted the motion to suppress based on its conclusion that Brooks did not violate R.C. 4503.21, rather than whether Officer Parker possessed probable cause that the statute had been violated. Second, the trial court erroneously concluded that the tags on the vehicle Brooks was occupying were "not hidden or covered to obstruct the officer's view in any way."
 {¶ 43} "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution." Dayton v. Erickson, 76 Ohio St.3d 3, 1996 Ohio 431, syllabus. "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause." Illinois v. Gates (1983),462 U.S. 213, 245 n. 13.
 {¶ 44} It is a violation of Ohio law to "fail to display in plain view on the * * * rear of the motor vehicle * * * any county identification sticker and any validation sticker issued under * * * the Revised Code." R.C. 4503.21. The trial court determined, in its findings of fact, that the bracket surrounding the vehicle's rear license plate covered one quarter of the county and validation stickers. These two facts unquestionably establish probable cause that a violation of R.C. 4503.21
had occurred.
 {¶ 45} The trial court and the majority opinion focus, instead, on whether a violation of R.C. 4503.21 actually occurred. This is not the proper standard for evaluating Officer Parker's probable cause to effectuate a stop.
 {¶ 46} For example, in State v. Walters, 12th Dist. No. CA2004-04-043, 2005-Ohio-418, an officer effectuated a stop for a violation of a "No Left Turn" sign which subsequently became an arrest for DUI. Id. at ¶ 2. The sign did not conform to the Ohio Manual of Uniform Traffic Control Devices as required by R.C. 4511.11 and, therefore, there was no actual violation of the law. On this basis, the trial court suppressed the evidence obtained during the stop. Id. at ¶ 3?. The court of appeals reversed, emphasizing that the proper test is not whether a traffic violation had occurred, but whether the officer's belief that a violation had occurred is objectively reasonable. Id. at 133.
 {¶ 47} The Ohio Supreme Court affirmed the Walters decision inBowling Green v. Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563. The high court explained "the fact that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense. Probable cause does not require the officer to correctly predict that a conviction will result. We agree with the sentiment expressed in a federal case involving an officer who stopped a vehicle based on the mistaken belief that the windows were tinted darker than the law permitted. The court observed that the officer `was not taking the bar exam. The issue is not how well [the officer] understood California's window tinting laws, but whether he had objective, probable cause to believe that these windows were, in fact, in violation.'United States v. Wallace (C.A.9, 2000), 213 F.3d 1216, 1220." Id. at ¶ 15.
 {¶ 48} Accordingly, the issue in the present case is not whether Officer Parker understood the subtleties of sticker and tag display law, but whether his belief that the law had been violated where one quarter of the tags was obscured was reasonable. The majority's opinion amply demonstrates the divergence of opinion among appellate courts as to what constitutes "plain view." This issue is for the courts to resolve, not Officer Parker.
 {¶ 49} In addition to applying the wrong legal standard, the trial court's finding that the tags were "not hidden or covered to obstruct the officer's view in any way" is against the manifest weight of the evidence. Officer Parker testified that his view of both the county and the validation stickers were obstructed by the bracket surrounding the vehicle's rear license plate. The trial court completely disregarded this testimony, relying instead on a photograph of the license plate taken by Brooks the day after the arrest and after the bracket and license plate had been removed from the vehicle during a search of the vehicle. Assuming that this photograph accurately depicts the appearance of the license plate at the time of the stop, three of the numbers on the tags are so obscured as to make their identification uncertain. These numbers are rounded at the top while the lower half of the numbers is covered by the bracket. Thus, it is impossible to distinguish whether a particular number is an "8" or a "9" or a "0." This photographic evidence corroborates Officer Parker's testimony that he was unable to discern the vehicle's county and validation stickers.
 {¶ 50} I also disagree with the majority's conclusion that, in order to violate R.C. 4503.21, the numbers on the county and validation stickers must be "unreadable." That issue is not properly before this court; Brooks was not charged with violating R.C. 4503.21. Moreover, the statute does not speak in terms of readability, but in terms of "plain view." The majority's concern about police stopping "any vehicle on the road having frames which touch the license tags" resulting in "many innocent citizens" having their vehicles searched is unfounded. A bracket that merely touches the tags does not obscure the "plain view" of the tags. A vehicle stopped for violation of the sticker/tag display law does not automatically result in a search of the vehicle.
 {¶ 51} For the foregoing reasons, Officer Parker's stop of Brooks' vehicle is supported by probable cause. The decision of the trial court should be reversed.